UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANAN FARAJ, | |
| Plaintiff, | Case No. 16-cv-02748 |
| v. | |
| DOLLAR TREE STORES, INC. | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hanan Faraj ("Plaintiff") alleges that she sustained injuries after she slipped and fell on an unidentified substance that was negligently left on the floor of Defendant Dollar Tree's ("Defendant's") store in Chicago, Illinois. On January 13, 2017, Defendant moved for summary judgment. Def.'s Mot. Summ. J. [30]. For the reasons stated below, Defendant's motion [30] is granted.

### I. Background[1]

One afternoon in September 2014, Plaintiff visited Defendant's store located at 5347 North Lincoln Avenue in Chicago, Illinois. DSOF [29] ¶ 6. Plaintiff shopped for approximately ten to fifteen minutes before going to the cash register to pay. *Id.* ¶¶ 7, 9. As she was paying, Plaintiff realized that she had forgotten an item. *Id.* ¶ 9. Plaintiff asked the cashier to hold her purchased goods at the cash register, and returned to the store's main floor to retrieve the forgotten merchandise. *Id.*

---

[1] Case facts are largely taken from Defendant's Local Rule 56.1 Statement of Undisputed Facts [29] ("DSOF") and accompanying exhibits.

Plaintiff walked directly to a food product aisle, which she had not visited during her initial trip through the store. *Id.* ¶¶ 12, 14. Seconds after entering the aisle, Plaintiff's right foot slipped and she fell to the ground onto her right shoulder. *Id.* ¶¶ 12, 16. After she fell, Plaintiff noticed a substance on the floor that, by her observation, resembled "vomit mixed with yogurt." *Id.* ¶ 20. The substance was "pink and yellow" in color, and covered an area approximately two to three feet long by two feet wide in the middle of the aisle. *Id.* ¶¶ 20, 22, 24. At her deposition, Plaintiff testified that the substance "smelled very bad." DSOF [29] Ex. A at 82:13. Plaintiff further testified that she did not know how long the substance had been present in the aisle, but, based upon the smell, opined that it had been there "maybe for a while." *Id.* at 99:12-100:18. Plaintiff took a photograph of the substance immediately after her fall, which Defendant attached to its summary judgment motion. DSOF [29] Ex. A.

Plaintiff called for help until another customer came to offer assistance. DSOF [29] ¶ 17. Shortly thereafter, Peter Klepacki, the store manager, and another Dollar Store employee arrived at Plaintiff's location. *Id.* ¶ 18. The employee called an ambulance, which took Plaintiff to the hospital. DSOF [29] Ex. B at 37:19, 50:23-24.

Klepacki testified at his deposition that, at the time of Plaintiff's fall, he was working in a nearby health and beauty supplies aisle. *Id.* at 28:2-6. Klepacki further testified that he was in the process of conducting the store's midday "recovery," during which employees organize and straighten merchandise

2

throughout the store. *Id.* at 29:5-15. Klepacki stated that the store conducted a thorough "recovery" at least three times a day—at the beginning, middle, and end of business hours—but that employees also "constantly" inspected the premises for hazards. *Id.* at 75:6-18. Klepacki stated that, although he no longer had independent recollection, based upon his usual "recovery" routine, he would have inspected the aisle in which Plaintiff ultimately fell approximately ten minutes before her accident. *Id.* at 112:14-113:8, 119:20-120:5. Klepacki did not recall observing any substance on the floor at that time, and testified that if he had, he would have immediately cleaned it pursuant to Defendant's policies and procedures. *Id.* at 102:15-17, 134:20-135:18.

Klepacki stated that he first noticed the substance on the floor after coming to Plaintiff's aide after her fall. *Id.* at 50:11-18. Although Klepacki did not recall any particular smell, he testified that Plaintiff told him that the substance was vomit. *Id.* at 48:5-12. According to Klepacki, the substance appeared "very fresh and very wet." *Id.* at 103:13-16, 111:15-112:2. After Plaintiff was taken to the hospital, Klepacki cleaned the substance with a mop and bleach. *Id.* at 112:4-13. No part of the substance was preserved. *Id.* at 47:21-24.

Although Plaintiff noticed that there were "some" customers in the store at the time of her fall, she could not recall how many there were. DSOF [29] Ex. A at 44:10-46:15. Plaintiff did remember, however, that it was "kind of a big Dollar Tree." *Id.* at 44:14-15. Klepacki recalled between ten and fifteen customers, although he did not count them. DSOF [29] Ex. B at 48:18-49:1. Klepacki also

3

testified that midday crowds at Defendant's store are generally smaller, thus justifying the need for only two employees on the day of Plaintiff's accident (as opposed to evenings or weekends, when up to six or seven employees are present). *Id.* at 117:11-118:16, 133:6-9.

On February 18, 2016, Plaintiff filed suit in state court, alleging negligence on the part of Defendant for failing to properly maintain its premises or warn Plaintiff of the slippery substance. Notice [1] Ex. A. On March 2, 2016, Defendant removed the case to this Court. Notice [1]. On January 13, 2017, Defendant moved for summary judgment. Def.'s Mot. Summ. J. [30].

## II. Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Once a party has made a properly-supported motion for summary judgment, "the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotations omitted). Summary judgment is appropriate if the moving party can establish that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Burnell v. Gates Rubber Co.*, 647

4

F.3d 704, 708 (7th Cir. 2011). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and the "mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion." *Siegel*, 612 F.3d at 937. Instead, there must be evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting its analysis, the Court construes all facts and reasonable inferences in favor of the nonmoving party. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 653 (7th Cir. 2010).

### III. Analysis

To establish a claim for negligence under Illinois law, Plaintiff must prove: (1) the existence of a duty of care owed by Defendant to Plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (citing *Thompson v. Gordon,* 948 N.E.2d 39, 45 (Ill. App. Ct. 2011)). Additionally, under Illinois' comparative negligence statute, Plaintiff may not recover damages if her contributory fault is more than fifty percent of the proximate cause of her injuries. *See* 735 ILCS § 5/2-1116(c).

Defendant asserts that it is entitled to summary judgment because: (1) the substance that caused Plaintiff's fall was "open and obvious"; (2) Defendant did not possess actual or constructive notice of the substance; and (3) Plaintiff's comparative fault is more than fifty percent. Def.'s Mot. Summ. J. [30] 3. The

5

Court limits its analysis to Defendant's notice theory, which the Court finds dispositive.

### A. There Is No Genuine Dispute That Defendant Lacked Actual Or Constructive Notice Of The Substance That Caused Plaintiff's Fall

Illinois retailers owe their invitees a duty to maintain their premises in a reasonably safe condition. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057-58 (Ill. 2006). A business owner breaches its duty to an invitee who slips on a foreign substance if: (1) the substance was placed there by the negligence of the proprietor; (2) its servant knew of its presence; or (3) the substance was present for a sufficient length of time that, in the exercise of ordinary care, its presence should have been discovered. *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc.*, 953 N.E.2d 427, 431 (Ill. App. Ct. 2011); *Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001); *Hayes v. Bailey,* 400 N.E.2d 544, 546 (Ill. App. Ct. 1980). In other words, liability may only be imposed if a plaintiff establishes that the defendant "had actual or constructive notice of the dangerous condition that caused the fall." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (citing *Pavlik,* 753 N.E.2d at 1010; *Tomczak v. Planetsphere, Inc.,* 735 N.E.2d 662, 666 (Ill. App. Ct. 2000)).

Here, Plaintiff relies solely upon a theory of constructive notice. *See* Pl.'s Resp. Def.'s Mot. Summ. J. [30] 6 ("Plaintiff acknowledges that there is no evidence in the record to suggest that Defendant placed the substance on the ground or that Defendant had actual notice of its presence."). Constructive notice can be established by either presenting evidence that: (1) the dangerous condition existed

for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care; or (2) the dangerous condition was part of a pattern of conduct or a recurring incident. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Plaintiff presents no evidence of a pattern. Of "critical importance," therefore, "is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007) (quoting *Tomczak,* 735 N.E.2d at 667) (internal quotations and alterations omitted); *see also Reid*, 545 F.3d at 481-82 (same); *Thompson v. Econ. Super Marts, Inc.*, 581 N.E.2d 885, 888 (Ill. App. Ct. 1991) ("[T]he time element to establish knowledge or notice to the proprietor is a material factor."). It "is incumbent upon *the plaintiff* to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor." *Hayes*, 400 N.E.2d at 546 (emphasis added).

In the Seventh Circuit, there "is no bright-line rule indicating the requisite time to establish notice." *Reid*, 545 F.3d at 483. Rather, the Court evaluates time in the context of "the circumstances of the particular case." *Id.* Relevant factors include: (1) the area where the spill occurred; (2) the time the spill occurred; (3) the visibility of the spill; (4) the number of customers and employees in the store; and (5) the store's inspection policies. *Id.* at 482-483; *see also Peterson v. Wal-Mart Stores, Inc.,* 241 F.3d 603, 605 (7th Cir. 2001); *Coleman v. Wal-Mart Stores, Inc.*, No. 1:14-cv-6175, 2017 WL 168178, at *2 (N.D. Ill. Jan. 17, 2017). If a holistic review of the record reveals evidence "tending to show constructive notice," then the issue of

7

negligence "will be submitted to the jury." *Hayes*, 400 N.E.2d at 546. Absent "any evidence demonstrating the length of time that the substance was on the floor," however, "a plaintiff cannot establish constructive notice." *Reid*, 545 F.3d at 482.

As one would expect, the totality-of-the-circumstances approach has led to varying results. *Compare Zuppardi*, 770 F.3d at 651-52 (holding that Wal-Mart did not have constructive notice of a colorless, odorless spill that went unnoticed for "a few minutes") *and Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 680 (Ill. App. Ct. 1980) (holding that the presence of a phlegm-like substance on the floor in the women's clothing department of an uncrowded retail department store for ten minutes did not give rise to constructive notice) *with Peterson,* 241 F.3d at 605 (ten-minute time frame may be sufficient in self-service stores where customer traffic is heavy) *and Kling v. Menard, Inc.*, No. 13-cv-8322, 2015 WL 1607601, at *3 (N.D. Ill. Apr. 2, 2015) ("Unlike the plaintiff in *Zuppardi* who could only guess at what Wal–Mart knew, Kling has presented evidence that a Menards employee not only knew of a recent spill but also made an attempt to clean it up.").

The Seventh Circuit's decision in *Reid*, however, presents facts in line with those at issue here. In *Reid*, the plaintiff and her friend visited a Kohl's department store to shop for men's dress shirts. *Id.* at 480. After stepping off the carpet of the men's section onto a tile floor aisle, the plaintiff slipped and fell. *Id.* The plaintiff saw near the spot of her fall "a pink milkshake spilled from a large cup in a pool on the tile floor." *Id.* Shortly thereafter, the manager arrived at the scene to assist the plaintiff. *Id.* Although the manager saw the "pink smoothie, milkshaky ice cream

8

type of thing" on the floor near the plaintiff when she arrived, she did not see the spilled milkshake on the floor during an inspection of the aisle area "at most ten minutes prior to the fall." *Id.* at 480-81.

The plaintiff subsequently filed a complaint against Kohl's. *Id.* at 481. During the course of discovery, the plaintiff "presented photographs of the partially melted milkshake taken shortly after the accident." *Id.* at 482. Additionally, the plaintiff testified at her deposition that although "she could not tell exactly how long the milkshake was on the floor prior to her fall," it "appeared to [her] that it may have been down there for some time because it was starting to get liquid in some areas of the spillage." *Id.* Her friend also testified regarding how long the milkshake might have been on the floor, but contrary to the plaintiff, suggested that the spill looked as if it had "just happened." *Id.*

The district court granted summary judgment to the defendant, finding, in part, that Kohl's had no constructive notice of the spill. *Id.* at 481. The Seventh Circuit affirmed. According to the court, neither the testimony of the plaintiff and her friend, nor the photographs of the spillage, "indicate[d] with any degree of certainty how long the milkshake had been on the floor." *Id.* at 482. The court further noted that it would be "far too speculative" for a fact-finder to infer from merely "the texture of the melted beverage" that it had been on the floor for an extended period of time. *Id.* On the record presented, the court knew "little about the substance that caused [the plaintiff] to slip other than its color," and the plaintiff "presented no evidence regarding its origin or its composition." *Id.*

9

The court ruminated that "perhaps [the milkshake's] original owner ordered it extra thin or thick; perhaps the milkshake came from a vendor known for particularly heavy or light milkshakes; perhaps the milkshake was not a milkshake at all, but rather frozen yogurt or a fruit smoothie." *Id*. Regardless, the court found that, in the end, the record was "devoid of any facts which would have given insight into the relevant time frame." *Id*. Absent such evidence, the plaintiff's "cursory conclusion that the milkshake must have been on the ground for some time" fell flat. *Id*. This meant that "the only affirmative statement regarding the length of time" came from the manger, who stated that the milkshake was in the aisle for a maximum of ten minutes prior to the fall. *Id.*

The court held that, under the circumstances presented, "no reasonable person could conclude that ten minutes was enough time to give Kohl's constructive notice of the spilled substance." *Id*. at 482-83. The court noted that on the afternoon of the accident, few customers were in the store, which lessened the likelihood of the hazardous condition, and by extension, the defendant's obligation to provide frequent and careful patrolling. *Id*. at 483. Additionally, the store's internal procedure for monitoring for spills, which included a walk-through by the manager on duty, appropriately addressed the threat of such issues. *Id.* at 481, 483. On such facts, "ten minutes was not enough to give Kohl's constructive notice of the spill." *Id.*

Plaintiff's purported evidence in this case is nearly identical to that presented in *Reid*. As in *Reid*, Plaintiff acknowledges that she does not know how long the

substance was present in the aisle prior to her fall. DSOF [29] Ex. A at 99:12-14. Based upon smell, Plaintiff guesses that the substance had been there "maybe for a while," *id.* at 99:15-24, but like *Reid*, such testimony is "far too speculative" to support a reasonable finding of constructive notice. 545 F.3d at 482. The single photograph taken by Plaintiff does nothing to resolve this uncertainty. As in *Reid*, the photograph reveals "little about the substance" other than its color, and Plaintiff has presented no other evidence regarding its "origin or its composition." *Id.*

Without more (and there is no more here), the Court is left only with Klepacki's testimony that he does not recall observing a substance on the floor ten minutes before Plaintiff's fall. DSOF [29] Ex. B at 102:15-17, 112:14-113:8, 134:20-135:18. Although Plaintiff attacks the reliability of Klepacki's statement, "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion"; Plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (internal citations and alterations omitted). Plaintiff fails to do so here.

The Court finds, therefore, that as in *Reid*, no reasonable fact-finder could conclude under the totality of the circumstances that ten minutes was enough time to give Defendant constructive notice of the spilled substance. There is no evidence that other customers were in the aisle where Plaintiff's fall took place, and there were no witnesses to the accident. *See Zuppardi*, 770 F.3d at 652. Had customer traffic been heavy, the burden would have been on Defendant "to provide frequent

11

and careful patrolling." *Id.*; *Reid*, 545 F.3d at 483; *Peterson,* 241 F.3d at 604-05. Few customers were in the store, however, which lessened the likelihood of a hazardous condition and the duty to scrutinize the aisles. *See Zuppardi*, 770 F.3d at 652; *Reid*, 545 F.3d at 483. Moreover, Defendant's internal policies, which included frequent "recovery" inspections and required employees to remedy slip and fall hazards immediately, "appropriately addressed the threat" of accidents like the one at issue here. *Zuppardi*, 770 F.3d at 652; *Reid*, 545 F.3d at 483. Considering these circumstances cumulatively, ten minutes was not enough time to give Defendant constructive notice.[2]

### B. Plaintiff's Untimely Request For Expert Discovery Is Unavailing

Recognizing her evidentiary deficiencies, Plaintiff argues in her response to Defendant's motion—for the first time—that "Plaintiff's primary means of proving constructive notice depends on the identity of the substance, which neither party has yet been able to definitely identify." Pl.'s Resp. Def.'s Mot. Summ. J. [31] 7. According to Plaintiff, "an expert may be able to determine . . . the identity of the substance," and, by extension, "how long it would have had to have been on the floor for it to have the particular characteristics present in the photograph" taken by Plaintiff. *Id.* at 8. Plaintiff claims that Defendant, by moving for summary

---

[2] On this score, the present case is distinguishable from the Court's recent denial of summary judgment in *Coleman v. Wal-Mart Stores, Inc.*, No. 1:14-cv-6175, 2017 WL 168178, at *2 (N.D. Ill. Jan. 17, 2017). There, the plaintiff presented evidence from which a reasonable fact-finder could infer that: (1) the spill at issue was on the floor for up to forty minutes before her fall; (2) no less than four employees were at least partially responsible for maintaining the floor; and (3) an employee had attempted to clean up the spill. *Id.*

12

judgment at this stage of the litigation, "has effectively precluded Plaintiff" from obtaining such expert testimony. *Id.* at 9.

The Court rejects Plaintiff's attempt to shift procedural burdens. Under Federal Rule of Civil Procedure 56(d), the Court may indeed deny or continue a motion for summary judgment pending further discovery. *See also Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000) (stating same for Rule 56(d)'s predecessor, Rule 56(f)). Such action is only appropriate, however, "if the nonmovant submits an affidavit demonstrating why it cannot yet present facts sufficient to justify its opposition to the motion." *Id.*; *see also Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) ("A prerequisite to granting relief, however, is an affidavit furnished by the nonmovant."). The purpose of the affidavit "is to ensure that the nonmoving party is invoking the protection of [Rule 56(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *First Chicago International v. United Exchange Co., LTD,* 836 F.2d 1375, 1380 (D.C. Cir. 1988). Multiple circuit courts have considered "presumably unverified statements in attorney memoranda" to be "wanting as grounds for a [Rule 56(d)] continuance." *See, e.g., Campbell*, 962 F.2d at 1522; *Worster v. U.S. Postal Serv.*, 28 F. App'x 324, 326 (4th Cir. 2002) ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by [Rule 56(d)] by filing an affidavit, there is no abuse of discretion in denying the motion to extend time and granting summary judgment, if it is otherwise appropriate."); *Radich v. Goode*,

886 F.2d 1391, 1394 (3d Cir. 1989) ("Appellants contend that their attorney's unverified memorandum opposing the motion for summary judgment complies with the [Rule 56(d)] affidavit requirement. It does not. [Rule 56(d)] clearly requires that an affidavit be filed. . . . An unsworn memorandum opposing a party's motion for summary judgment is not an affidavit."). The Seventh Circuit has cited *Campbell* in upholding Rule 56(d)'s affidavit requirement. *See Woods*, 234 F.3d at 990.

Beyond the failure to file any Rule 56(d) affidavit supporting the need for expert discovery, Plaintiff has made prior representations that no expert discovery was necessary for dispositive motion practice. Fact discovery closed on November 30, 2016. Minute Entry [27]. At a status hearing held on December 1, 2016, the Court inquired whether the parties desired to set an expert discovery schedule. Def.'s Reply [34] Ex. C at 2:13-14. Defendant indicated that, before expert discovery, it desired to file a motion for summary judgment. *Id.* at 2:15-24. In response, counsel for Plaintiff stated, "I don't think we need to begin expert discovery for him to file his motion for summary judgment." *Id.* at 3:5-7. Even after the Court informed both parties that it would not entertain a second round of dispositive motions, both parties maintained that, at the time, expert discovery was unnecessary. *Id.* at 2:25-3:3, 3:18-4:4. On these facts, the Court finds that Plaintiff failed to satisfy the requirements of Rule 56(d).

Moreover, even if the Court were to waive Rule 56(d)'s affidavit requirement, Plaintiff does not demonstrate how expert discovery would generate a genuine issue

of material fact. *See Woods*, 234 F.3d at 990. Plaintiff speculates, without any support, that an expert may be able to determine the true identity of the substance at issue (*i.e.*, whether it was vomit or yogurt). Based upon the present record—which includes only Plaintiff and Klepacki's deposition testimony and Plaintiff's post-accident photograph—the Court sees no basis for such a conclusion. Plaintiff further avers that an expert may divine how long the substance "would have had to have been on the floor for it to have the particular characteristics" present in the photograph taken by Plaintiff. Such conjecture is precisely the sort of "metaphysical doubt as to the material facts" that relevant case law has deemed incapable of thwarting summary judgment. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## IV. Conclusion

Defendant's Motion for Summary Judgment [30] is granted. The Clerk is directed to enter Rule 58 judgment in favor of Defendant and against Plaintiff. Civil case terminated.

Dated: April 17, 2017

Entered:

_____
John Robert Blakey
United States District Judge